Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas St.
Ennis, TX 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
*Proposed Attorneys for Plaintiff*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 26-33110** |
| | § | |
| **LOUIS INVESTMENTS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |
| **LOUIS INVESTMENTS, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **ADVERSARY PROCEEDING** |
| **v.** | § | |
| | § | **CASE NO. 26-03071-sgj** |
| **YSA Investments 1, LLC,** | § | |
| | § | |
| **Defendant.** | | |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW, Plaintiff Debtor Louis Investments, LLC ("Plaintiff" or Louis Investments"), by and through its undersigned counsel, and files this Emergency Motion for Temporary Restraining Order against Defendant YSA Investments 1, LLC ("Defendant" or "YSA"), and alleges as follows:

## EMERGENCY RELIEF REQUESTED

1. Louis Investments seeks an immediate temporary restraining order preserving the status quo and stopping YSA's police-assisted self-help takeover efforts at the multifamily apartment properties listed on Exhibit A to the Declaration of Marc Kulick filed in support of this Motion, except for any property identified in the Declaration as being operated by a receiver (collectively, the "Subject Properties").

2. This Motion arises from events that occurred today, July 20, 2026, at Riverpark at Kensington Apartments, located at 7803 S. Wheeling Ave., Tulsa, Oklahoma 74136 (the "Riverpark Property") and from YSA's broader effort to use self-help to take possession, control, or operational management of the Subject Properties without stay relief, eviction orders, writs of possession, receivership orders, turnover orders, or other court authority.

3. The Riverpark Property is owned by Riverpark Best Living, LLC. Louis Investments is the direct or indirect upstream manager of the majority of the properties managed by Vesta Realty, LLC ("Vesta Realty"), including the Riverpark Property and other Subject Properties.

4. Vesta Realty is the existing management company operating the Riverpark Property and the Subject Properties.

5. This morning, representatives of YSA, representatives of a competing property-management company called Capital Assets, and officers from the Tulsa Police Department appeared at the Riverpark Property and attempted to displace Vesta Realty from operational control as part of YSA's broader effort to take over management and possession of the Subject Properties.

6. YSA had no order from this Court granting relief from the automatic stay. YSA had no eviction order. YSA had no receivership order. YSA had no writ of possession. YSA had no turnover order. YSA had no injunction authorizing it to evict Vesta Realty, remove Vesta Realty employees, change management, seize management offices, or take operational control of the Riverpark Property or any other Subject Property.

7. Instead, YSA used police-assisted self-help.

8. As set forth in the Declaration of Marc Kulick filed in support of this Motion, Officer J.D. Rice of the Tulsa Police Department stated that YSA “has a deed,” stated that the matter was “not my concern” when informed of the bankruptcy, and then Tulsa Police began ticketing Vesta Realty employees for trespass and threatening them with arrest if they did not leave the Riverpark Property. Those acts demonstrate the need for a TRO protecting all Subject Properties because YSA is using alleged deeds, disputed title claims, law enforcement, and a new management company to change possession and management without court order.

9. YSA’s representatives admitted they had no court order.

10. Vesta Realty personnel and Mr. Kulick left the Riverpark Property under threat of tickets and arrest.

11. Mr. Kulick has also learned that YSA forcibly took possession this morning of three properties that are already in bankruptcy and individually protected by the automatic stay by going onto those properties and changing the locks on the on-location property-management offices:

a. 727 Lofts Best Living, LLC, USBC N.D. Tex. Case No. 26-32779-sgj11;

b. Barcelona Best Living, LLC, USBC N.D. Tex. Case No. 26-33093-11; and

c. A-V Village Creek Owner LLC, USBC N.D. Tex. Case No. 26-32922-11.

These additional lock-change incidents show that YSA’s self-help efforts are not limited to the Riverpark Property and that a Riverpark-only TRO would be inadequate to protect Louis Investments’ estate interests, Vesta Realty’s operational management, and the Subject Properties.

12. Louis Investments seeks an emergency TRO requiring YSA to stop all self-help takeover efforts, restore the status quo, return operational control to Louis Investments and Vesta Realty’s management structure, and refrain from further acts to obtain possession of, exercise control over, or interfere with estate property and estate-related rights at or relating to any Subject Property absent further order of this Court.

13. The Motion is supported by the Declaration of Marc Kulick, the adversary complaint filed contemporaneously with this Motion, the record in Louis Investments' Chapter 11 case, and such evidence and argument as may be presented at hearing.

## SUMMARY OF ARGUMENT

14. YSA cannot bypass this Court and use a claimed deed, police officers, trespass tickets, arrest threats, and a competing property manager to seize control of property operations that are intertwined with Louis Investments' estate rights at the Subject Properties.

15. The automatic stay protects not only fee title to property, but also the Debtor's legal and equitable interests, management rights, contract rights, governance rights, causes of action, defenses, control rights, and arguable property interests.

16. The Northern District of Texas Bankruptcy Court has recognized that even when the estate does not own the underlying real property, an estate interest in that property is protected by the automatic stay if third-party action could extinguish, impair, or exercise control over that interest.

17. YSA's conduct is exactly the kind of extra-judicial dismemberment the automatic stay prevents.

18. Without immediate relief, YSA appears poised to continue a multi-property self-help campaign, including at properties already in bankruptcy and protected by the automatic stay and at the Subject Properties.

19. Louis Investments is likely to succeed on the merits of its stay-violation claim. It faces immediate and irreparable harm to management control, property operations, tenant relations, records, rents, employee safety, reorganization efforts, and restructuring efforts at the Subject Properties. The balance of harms favors Louis Investments because YSA can seek relief in court, while the Debtor faces immediate operational disruption if YSA is allowed to continue. The public interest favors enforcing the automatic stay, preventing breach of the peace, protecting tenants and employees, and requiring property disputes affecting bankruptcy estates to be resolved by court order.

## FACTUAL BACKGROUND

### A. Louis Investments/Vesta Enterprise, Property Structure, and Louis Investments' Estate Interests in the Riverpark Property Structure

20. Plaintiff Louis Investments is the direct or indirect manager of most of the Title Owners, including Riverpark Best Living, and manages a portfolio of multifamily real estate assets through a network of limited liability companies.

21. The Title Owners own the actual real estate that is the target of YSA.

22. Riverpark Best Living owns the Riverpark Property. Vesta Realty manages the Riverpark Property.

23. Louis Investments' role as the most upstream manager gives it rights, powers, duties, claims, defenses, and economic and operational interests connected to the Riverpark Property and Riverpark Best Living.

24. Those interests include, without limitation, direct or indirect management rights, governance rights, control rights, contract rights, rights to direct or preserve management, records and information rights, causes of action, defenses, claims to protect the property structure, claims to prevent unauthorized transfers or control changes, and reorganization value.

25. These legal and equitable interests are property of Louis Investments' bankruptcy estate under 11 U.S.C. § 541.

26. The scope of § 541 is broad and includes legal and equitable interests, tangible and intangible rights, causes of action, claims, contract rights, and other forms of property.

27. YSA's attempt to displace Vesta Realty and install a new management company directly interferes with those estate interests.

28. YSA's actions threaten to alter the status quo, impair the Debtor's restructuring, disrupt property operations, affect tenant relationships, interfere with rents and revenue systems, impair property records, and shift operational control away from the Debtor's management structure.

**B. YSA's Disputed Claims Against the Riverpark Property**

29. YSA asserts disputed rights against the Riverpark Property and other Vesta/Louis properties.

30. Those asserted rights include purported second mortgage rights, purported rights under powers of attorney, purported deed-in-lieu or title-transfer rights, purported foreclosure rights, and purported management-control rights.

31. Louis Investments disputes YSA's asserted rights and contends, among other things, that YSA lacks valid authority to control, convey, foreclose upon, possess, or manage the Riverpark Property.

32. YSA's asserted rights arise from transactions and instruments that are disputed, subject to avoidance, subject to disallowance, subject to declaratory relief, and subject to this Court's jurisdiction.

33. YSA has not obtained relief from the automatic stay to exercise control over Louis Investments' estate interests in the Riverpark Property, Riverpark Best Living, management rights, property operations, or related rights.

34. YSA has not obtained an order from this Court authorizing it to remove Vesta Realty, install a new management company, direct police action, trespass Vesta Realty personnel, arrest or ticket Vesta Realty personnel, or otherwise alter the management and operational status quo at the Riverpark Property.

35. YSA has not obtained an order from any court authorizing police-assisted eviction or removal of Vesta Realty as property manager.

36. YSA has not obtained a writ of possession, eviction order, receivership order, turnover order, injunction, or other judicial process authorizing the conduct alleged herein.

**C. YSA's Police-Assisted Attempted Takeover on July 20, 2026**

37. On July 20, 2026, under YSA's direction, the Tulsa Police Department and a new management company appeared at the Riverpark Property.

38. The new management company was not the existing property manager for the Riverpark Property.

39. Vesta Realty was and is the existing property manager for the Riverpark Property.

40. Vesta Realty personnel were present at the Riverpark Property in the ordinary course of their duties managing the property.

41. Under YSA's direction, the Tulsa Police Department and the new management company attempted to trespass Vesta Realty personnel from the Riverpark Property.

42. Under YSA's direction, Vesta Realty personnel were threatened with arrest or ticketing if they remained at or continued performing management functions at the Riverpark Property.

43. The threatened arrests, threatened tickets, trespass threats, and attempted exclusion of Vesta Realty personnel were designed to remove the existing property manager and allow YSA or YSA's selected management company to take operational control.

44. YSA's use of police officers and a new management company was coercive and intended to change possession, control, and management of the Riverpark Property without court process.

45. YSA's conduct was an attempt to evict the property manager without an eviction order.

46. YSA's conduct was an attempt to obtain possession of, exercise control over, and interfere with property and rights protected by the automatic stay.

47. YSA's conduct was also an act to enforce disputed prepetition claims, liens, title-transfer theories, deed-in-lieu theories, mortgage theories, or control rights against property and rights tied to Louis Investments' bankruptcy estate.

48. YSA's conduct was an attempted end-run around the Bankruptcy Court.

49. YSA could have sought stay relief, declaratory relief, possession relief, or other relief from this Court.

50. Instead, YSA used police-assisted self-help.

51. YSA's conduct caused immediate harm to Louis Investments, including disruption of management, threat of loss of control over property operations, interference with estate rights, diversion of management and counsel resources, attorneys' fees, costs, and risk of harm to tenants, employees, records, rents, and operations.

52. YSA's conduct threatens continuing and irreparable harm unless enjoined.

53. Without immediate relief, YSA may continue or repeat the same conduct at the Riverpark Property or other properties in the Louis/Vesta enterprise.

54. Plaintiff is informed and believes that YSA intends to use self help to try and take possession of all of the properties that are managed by VR and to whom Louis Investments is the ultimate manager. In addition to the Riverpark Property, YSA forcibly took possession on July 20, 2026 of three properties that are already in bankruptcy and individually protected by the stay, by going onto the properties and changing the locks on the on-location property management offices. These three properties are:

a. 727 Lofts Best Living, LLC, USBC ND TX Case No. 26-32779-sgj11

b. Barcelona Best Living, LLC, USBC ND TX Case No. 26-33093-sgj11

c. A-V Village Creek Owner LLC, USBC ND TX Case No. 26-32922-mvl11.

55. All of the properties listed on Exhibit A require protection.

**D. The Automatic Stay Applies to Arguable Estate Interests and Control Rights**

56. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

57. Section 362(a) applies to "all entities," not merely creditors.

58. The stay protects estate property broadly, including intangible rights, contract rights, control rights, causes of action, and disputed or arguable interests.

59. In *In re Three Strokes Ltd. Partnership*, 397 B.R. 804 (Bankr. N.D. Tex. 2008), this Court held that a debtor's second lien interest in property it did not own was nevertheless property of the estate protected by § 362(a)(3).

60. This Court explained that although the underlying real property was not itself property of the estate, the debtor's lien interest in that property was a property interest worthy of recognition and protection.

61. This court held that foreclosure proceedings that could extinguish the debtor's lien interest constituted an exercise of control over property of the estate under § 362(a)(3).

62. This court further explained that § 362(a)(3) is not limited to creditor collection activity, because it applies to "all entities" and is designed to prevent dismemberment of the estate and provide the debtor-in-possession a breathing spell.

63. In reaching that conclusion, this Court relied on *In re Westec Corporation*, 460 F.2d 1139 (5th Cir. 1972), where the Fifth Circuit held that a debtor's mortgage interests were property interests protected by the bankruptcy court even though the debtor did not own fee title to the underlying real property.

64. This Court also relied on *In re Chesnut*, 422 F.3d 298 (5th Cir. 2005), where the Fifth Circuit held that a creditor violated the automatic stay by foreclosing on real property subject to an unresolved, arguable claim that it was property of the estate.

65. The Fifth Circuit in *Chesnut* recognized that the automatic stay must be interpreted broadly and applied to arguable property interests where uncertainty or ambiguity exists.

66. The same principle applies here.

67. Even if YSA contends that fee title to the Riverpark Property is not property of Louis Investments' estate, Louis Investments' upstream management rights, governance rights, contract rights, control rights, claims, defenses, and disputed property-related rights are estate property.

68. YSA's attempt to remove Vesta Realty and install a new management company could impair, alter, extinguish, or exercise control over those estate interests.

69. YSA was therefore required to seek stay relief before taking action.

70. YSA did not seek or obtain stay relief.

71. YSA violated the automatic stay.

## LEGAL STANDARD

72. Federal Rule of Bankruptcy Procedure 7065 makes Federal Rule of Civil Procedure 65 applicable in adversary proceedings.

73. A temporary restraining order is appropriate where the movant shows: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable harm if relief is denied; (iii) that the threatened injury outweighs any harm the requested order may cause the opposing party; and (iv) that the requested order will not disserve the public interest.

74. Bankruptcy courts also have authority under 11 U.S.C. § 105(a) to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code, including orders enforcing and protecting the automatic stay.

75. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

76. Section 362(a) applies to "all entities," not merely creditors.

77. In *In re Three Strokes Ltd. Partnership*, 397 B.R. 804 (Bankr. N.D. Tex. 2008), the Bankruptcy Court for the Northern District of Texas held that an estate's second lien interest in real property the debtor did not own was nevertheless estate property protected by § 362(a)(3).

78. This Court explained that although the real property itself was not property of the estate, the debtor's lien interest was a property interest worthy of recognition and protection, and foreclosure proceedings that could extinguish that interest constituted an exercise of control over property of the estate.

79. This Court emphasized that § 362(a)(3) is intended to prevent dismemberment of the estate and allow a breathing spell for a debtor-in-possession.

80. This Court relied on *In re Westec Corporation*, 460 F.2d 1139 (5th Cir. 1972), where the Fifth Circuit recognized that a debtor's mortgage interests were protected property interests even though the debtor did not own the underlying real estate.

81. This Court also relied on *In re Chesnut*, 422 F.3d 298 (5th Cir. 2005), where the Fifth Circuit held that the automatic stay applies broadly to arguable property interests and that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property.

82. These principles govern here. Even if YSA disputes whether the Riverpark Property or any other Subject Property itself is property of the Louis Investments estate, Louis Investments' upstream management rights, governance rights, control rights, contract rights, claims, defenses, causes of action, and other property-related interests in or relating to the Subject Properties are estate property or, at minimum, arguable estate property protected by the automatic stay.

## ARGUMENT

### A. Louis Investments is Substantially Likely to Succeed on the Merits

83. Louis Investments is substantially likely to succeed on its claim that YSA violated the automatic stay.

84. Louis Investments is a debtor-in-possession in this Court.

85. The automatic stay arose upon the filing of its Chapter 11 case and remains in effect.

86. Louis Investments holds estate interests in the subject Properties'upstream management structure, governance rights, control rights, contract rights, claims, defenses, operational rights, records, information, and reorganization value.

87. YSA's attempt to remove Vesta Realty personnel, install or act through Capital Assets, and use police threats and trespass tickets to displace existing management was an act to obtain possession of, exercise control over, or interfere with those estate interests at the Subject Properties.

88. YSA's conduct also constituted an act to enforce disputed title, deed, lien, mortgage, deed-in-lieu, or control rights against property and estate-related rights.

89. YSA had notice of the bankruptcy. Mr. Kulick informed Officer Rice and Greg Wright of the pending bankruptcy. YSA's representatives were present. Officer Rice responded, "That's not my concern."

90. YSA's representatives admitted they had no court order.

91. YSA therefore proceeded without stay relief, without an eviction order, without a writ of possession, without a receivership order, and without any judicial authorization to displace Vesta Realty at Riverpark or any other Subject Property.

92. *Three Strokes*, *Westec*, and *Chesnut* confirm that YSA was required to come to this Court before taking action that could impair or exercise control over estate interests or arguable estate interests.

93. A party claiming disputed property, title, possession, lien, deed-in-lieu, or management-control rights cannot bypass the bankruptcy court and use police-assisted self-help to change the status quo at the Subject Properties.

94. At a minimum, Louis Investments has arguable estate interests in the management and control structure affecting the Riverpark Property and the other Subject Properties. Under *Chesnut* and *Three Strokes*, uncertainty or ambiguity regarding estate property weighs in favor of stay protection, not self-help.

95. Louis Investments is therefore substantially likely to succeed on its stay-violation claim and related requests for declaratory, injunctive, turnover, and contempt relief.

**B. Louis Investments and the Estate Face Immediate and Irreparable Harm**

96. Louis Investments faces immediate and irreparable harm absent a TRO covering all Subject Properties.

97. YSA's conduct has already caused harm. Vesta Realty employees were ticketed for trespass and threatened with arrest while doing their jobs. Mr. Kulick and Vesta Realty employees left the Riverpark Property under threat of arrest or ticketing. YSA also reportedly changed locks at three properties already in bankruptcy, demonstrating actual multi-property operational disruption.

98. The harm is not merely monetary. YSA's conduct threatens loss of management control, disruption of property operations, confusion among tenants and vendors, loss of control over management offices, records, keys, access credentials, rent systems, tenant communications, and operating data across the Subject Properties.

99. YSA's conduct also threatens tenant disruption, employee disruption, vendor disruption, lender confusion, loss of estate value, increased administrative expenses, and impairment of reorganization efforts.

100. YSA's apparent conduct at 727 Lofts, Barcelona, and A-V Village Creek shows that YSA may continue or expand its self-help campaign absent immediate court intervention. and that a TRO limited to these properties would not protect the estate from the threatened broader takeover of the Subject Properties.

101. The risk is immediate and ongoing. If YSA is not restrained, it may continue using police, private agents, management companies, lock changes, trespass threats, tenant notices, rent redirections, or other coercive tactics to seize operational control of the Subject Properties.

102. Once management control, records, tenant communications, rent streams, software credentials, keys, locks, and property offices are altered at any Subject Property, the estate may suffer harms that cannot be fully repaired by damages.

103. Emergency injunctive relief is necessary to prevent further irreparable injury and restore the status quo.

**C. Louis Investments and the Estate Face Immediate and Irreparable Harm**

104. The balance of harms favors Louis Investments.

105. Without a TRO covering all Subject Properties, Louis Investments risks immediate loss of control over property operations and estate-related rights.

106. YSA, by contrast, suffers no cognizable harm from being required to obey the automatic stay and seek relief from this Court before taking possession, changing management, using police, changing locks, or asserting control over any Subject Property.

107. Requiring YSA to litigate rather than use police-assisted self-help imposes no legally cognizable hardship.

108. A TRO merely preserves the status quo pending a prompt hearing and protects the Court's jurisdiction over estate property and estate-related rights.

**D. The Public Interest Supports Entry of a TRO**

109. The public interest strongly favors the requested TRO.

110. The automatic stay is fundamental to bankruptcy administration. It centralizes disputes affecting the debtor and the estate and prevents piecemeal dismemberment.

111. The public interest is served by requiring parties to seek stay relief from the bankruptcy court rather than using police-assisted self-help to resolve disputed property and management rights.

112. The public interest is also served by preventing breach-of-the-peace risks at multifamily residential properties, avoiding confusion among tenants and employees, and preserving orderly property operations.

113. A TRO will protect tenants, employees, vendors, management personnel, and the estate by requiring that any dispute over title, possession, or management be resolved by court order.

**E. Bond Should Be Waived or Set at a Nominal Amount**

114. Federal Rule of Civil Procedure 65(c), made applicable by Federal Rule of Bankruptcy Procedure 7065, permits the Court to require security on terms the Court considers proper.

115. Under Federal Rule of Bankruptcy Procedure 7065, a debtor, trustee, or debtor-in-possession is not required to give security when seeking a temporary restraining order or preliminary injunction.

116. Louis Investments is a debtor-in-possession seeking to enforce the automatic stay and preserve estate property.

117. The Court should waive any bond requirement or set bond at a nominal amount.

**F. Relief Without Further Notice if Warranted and to the Extent Necessary**

118. Louis Investments seeks emergency relief because YSA's conduct is occurring now and has already displaced personnel at the Riverpark Property. The requested relief must cover all

Subject Properties to prevent YSA from simply moving from one property to the next while the Court considers preliminary injunctive relief.

119. YSA's representatives were present at the Riverpark Property today. YSA has actual knowledge of its own conduct and the dispute.

120. Louis Investments will provide notice of this Motion and any hearing as directed by the Court and by all practicable means, including electronic service and email to known counsel for YSA.

121. To the extent the Court determines ex parte relief is necessary to prevent immediate and irreparable injury before YSA can be heard, the Court should enter a TRO pending a prompt further hearing.

**NOTICE TO YSA**

122. On approximately 4:30 p.m. CT, counsel for Debtor provided notice to YSA that it intended to seek expedited relief with regards to the TRO and asked whether YSA opposed a hearing on an expedited basis. While counsel for YSA acknowledged receipt of the receipt, counsel has not indicated whether YSA consents or opposes.

**REQUESTED TEMPORARY RESTRAINING ORDER**

123. Louis Investments requests that the Court enter a temporary restraining order providing the following relief as to the Subject Properties pending further order of the Court:

124. YSA and its officers, agents, employees, representatives, attorneys, property managers, management companies, security personnel, contractors, affiliates, and all persons acting in concert with them should be restrained from taking any of the following actions at, against, concerning, or in connection with any Subject Property:

a. trespassing, excluding, removing, arresting, ticketing, threatening, or attempting to remove Vesta Realty personnel from the Subject Properties;

b. directing, requesting, encouraging, or causing the Tulsa Police Department or any law-enforcement agency to remove, trespass, arrest, ticket, threaten, or exclude Vesta Realty personnel;

c. installing, directing, using, or holding out Capital Assets or any other new property-management company as the authorized manager of the Subject Properties;

d. interfering with Vesta Realty's management of the Subject Properties;

e. taking possession of, exercising control over, or interfering with offices, keys, locks, records, computers, software systems, leasing files, tenant files, rent rolls, bank accounts, rent streams, communications, vendor relationships, employees, contractors, or other property operations;

f. contacting tenants, vendors, lenders, title companies, insurers, employees, contractors, or governmental authorities to assert that YSA, Capital Assets, or any other YSA-selected management company controls Subject Properties;

g. changing locks, access codes, management software credentials, banking credentials, rent-collection systems, utilities, vendor instructions, tenant-payment instructions, or any similar operational control mechanism;

h. relying on any disputed mortgage, deed in lieu, title claim, deed, POA, joinder, foreclosure theory, or other self-help theory to alter management, possession, or control; and

i. taking any action to obtain possession of, exercise control over, or interfere with estate property, estate-related property, or arguable estate property without further order of this Court.

125. Louis Investments further requests that the Court order YSA to:

a. immediately withdraw all instructions to the Tulsa Police Department, any other law-enforcement agency, Capital Assets, and any other management company concerning removal, trespass, arrest, ticketing, exclusion, displacement, lock changes, management changes, rent changes, or control changes;

b. immediately notify the Tulsa Police Department, Capital Assets, and any other management company in writing that YSA has no authority to remove Vesta Realty personnel or alter management absent further order of this Court;

c. immediately restore the status quo as it existed before the petition date

d. immediately return possession and operational control of every affected management office to Vesta Realty's operational management;

e. immediately return or restore any keys, access credentials, records, notices, rent instructions, management instructions, tenant communications, locks, software access, office access, or operational control obtained or altered because of YSA's conduct;

f. immediately rescind and withdraw any tenant, vendor, employee, lender, title-company, police, or management-company communication asserting that YSA, Capital Assets, or any other YSA-selected management company has taken control;

g. preserve and produce copies of all communications with the Tulsa Police Department, any other law-enforcement agency, Capital Assets, any new management company, tenants, vendors, employees, contractors, title companies, lenders, insurers, and any other person concerning YSA's July 20, 2026 conduct and attempted takeover efforts;

h. granting such other and further relief as the Court deems just and proper.

Dated: July 20, 2026

/s/ *Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas St.
Ennis, TX 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
*Proposed Attorneys for Plaintiff*

-and-

Leib M. Lerner, CA Bar No. 227323
*Pro Hac Vice to be filed*
Douglas J. Harris, CA Bar No. 329946
*Pro Hac Vice to be filed*
LERNER HARRIS LAW
9350 Wilshire Blvd., Suite 203
Beverly Hills, CA 90212
Telephone: (310) 742-5590
leib.lerner@lernerharris.com
douglas.harris@lernerharris.com
*Proposed Special Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 20, 2026, a true and correct copy of the foregoing document was served via email upon the parties listed below.

Marcus Alan Helt
Dechert LLP
2651 N. Harwood St., Suite 120
Dallas, TX 75201
Email: marcus.helt@dechert.com

/s/ *Joyce W. Lindauer*
Joyce W. Lindauer

Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas St.
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
PROPOSED ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **LOUIS INVESTMENTS, LLC,** | § | **CASE NO. 26-33110-sgj** |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **LOUIS INVESTMENTS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY PROCEEDING** |
| | § | |
| **YSA Investments 1, LLC,** | § | **CASE NO. 26-03071-SGJ** |
| | § | |
| **Defendant.** | | |

**DECLARATION OF MARC KULICK IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Marc Kulick, declare and state as follows:

1. I am the manager and 100% sole owner of Louis Investments, LLC, debtor herein ("Debtor") or ("Louis Investments"). I am also the managing member of Vesta Realty, LLC ("Vesta Realty"). I am over twenty-one and of sound mind. The facts set forth in this declaration are based upon my own personal knowledge, except for such facts that are based on information and belief, which I believe to be true. If called as a witness, I could and would testify competently thereto.

2. Vesta Realty is the management company that runs the operations on all of the entities listed on **Exhibit A** hereto, which are multi-family apartment complexes, except for one that is being run by a receiver.[1] Debtor is the direct or indirect corporate manager of the majority of these properties. I oversee the operations of the Debtor, Vesta Realty, the individual property level entities, and other affiliates.

3. There is an active dispute over ownership of the individual properties with YSA Investments 1 LLC ("YSA").

4. At 9:51 a.m. Central Time, I was notified by my corporate team, who was in turn notified by the on-site Vesta Realty management team at the property commonly known as Riverpark at Kensington, located at 7803 S. Wheeling Ave., Tulsa, OK 74136 ("Riverpark Property"), that Parker Detweiler, a representatives of YSA, Jonathan Bearney, a representative of YSA, J.D. Rice, an officer from the Tulsa Police Department ("TPD"), and Greg Wright, the owner of a competing property management company named Capital Assets, were at the Riverpark Property and trying to take control of it. I immediately drove over to the Riverpark Property, arriving there at approximately 10:15 a.m.

5. When I arrived at the Riverpark Property, I observed that there were actually about fifteen representatives and agents of YSA, TPD and Capital Assets on site. I immediately approached Officer Rice, who directed me to Greg Wright. I notified them both of Debtor's pending bankruptcy. I also asked them whether they had a court order that provided for YSA to legally evict Debtor or Vesta Realty from the Riverpark Property. Regarding the bankruptcy, Officer Rice said "That's not my concern." The YSA representatives admitted that they had no court order. Instead, Officer Rice said that YSA "has a deed."

[1] The property that is being operated by a receiver is The Canopy. There are additional properties that are being operated by receivers and/or are in bankruptcy that are not the subject of this emergency motion, and are not listed on Exhibit A.

6. At first, Officer Rice said that "this is a civil matter" and that the TPD was there to "enforce the title." Officer Rice ignored my protestations that title is in dispute. Then, despite the initial position that this was a civil matter, the TPD began to ticket VR employees onsite for trespass, despite them being there for their jobs. TPD also threatened the Vesta Realty employees with arrest if they would not leave. In light of these threats, and despite the bankruptcy protection provided to the Debtor and the normal legal protections that should have been provided to Debtor and Vesta Realty, both I and the VR employees left the Riverpark Property.

7. I am informed and believe that YSA intends to use self help to try and take possession of all of the properties. As I was preparing this declaration, I learned that YSA forcibly took possession this morning of three properties that are already in bankruptcy and individually protected by the stay, by going onto the properties and changing the locks on the on-location property management offices. These three properties are:

a. 727 Lofts Best Living, LLC, USBC ND TX Case No. 26-32779-sgj11
b. Barcelona Best Living, LLC, USBC ND TX Case No. 26-33093-sgj11
c. A-V Village Creek Owner LLC, USBC ND TX Case No. 26-32922-mvl11.

8. Debtor respectfully requests a temporary restraining order to freeze YSA's efforts at taking the properties in derogation of the bankruptcy stay and to order YSA to return control of every property to Louis Investments and Vesta Realty's operational management pending further decisions by this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 20, 2026

Marc L. Kulick

Marc Kulick

EXHIBIT A

| | Property | Location | County | Address | Owner(s) | Tax ID Number(s) | Units | Website | Date Acquired |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **Thrive Jenks** | Jenks, OK | Tulsa County | 204 S Riverfront Dr, Jenks, OK 74037 | Jenk's Best Living, LLC | 82-2976554 | 168 | www.thrive-jenks.com | 11/15/2017 |
| 2 | **Lakeside Place** | Tulsa, OK | Tulsa County | 2186 S 99th E Ave, Tulsa, OK, 74129 | Lakeside Best Living, LLC | 82-4692220 | 208 | www.lakesidebestliving.com | 4/30/2018 |
| 3 | **Shoreline** | Tulsa, OK | Tulsa County | 9601 East 21st Place, Tulsa, OK 74129 | Shoreline's Best Living, LLC | 16-1620714 | 464 | www.shorelinesbestliving.com | 6/6/2018 |
| 4 | **Lexington Commons** | Bartlesville, OK | Washington County | 5530 Colony Way, Bartlesville, OK 74006 | Bartlesville's Best Living, LLC | 83-1472249 | 206 | www.lexingtoncommonsapts.com | 10/8/2018 |
| 5 | **Seminole Ridge** | Oklahoma City, OK | Oklahoma County | 125 W Interstate 240 Service Rd, Oklahoma City, OK 73139 | Vesta - Seminole Ridge, LLC | 87-1213500 | 224 | www.seminoleridgeapartments.com | 3/2/2020 |
| 6 | **Tuscany Village** | Oklahoma City, OK | Oklahoma County | 6900 London Way Oklahoma City, OK 73132 | Tuscany Village Best Living, LLC | 85-2811301 | 318 | http://tuscanyapartmentsokc.com/ | 10/13/2020 |
| 7 | **The Canopy** | Little Rock, AR | Pulaski County | 9201 Kanis Rd, Little Rock, AR 72205 | Canopy Best Living, LLC, NAE Canopy Apartments LLC, and Northboro QN, LLC | 85-3849612 | 240 | http://www.thecanopyapartmentslittlerock.com/ | 12/14/2020 |
| 8 | **Barcelona** | Tulsa, OK | Tulsa County | 5160 S Yale Ave Tulsa, Oklahoma, 74135 | Barcelona Best Living, LLC and GAM Chestnut Properties LLC | 86-3280973 | 232 | www.barcelonatulsa.com | 5/28/2021 |
| 9 | **23 East** | Tulsa, OK | Tulsa County | 11321 E 23rd St Unit 1 Tulsa, OK 74129 | Auerbach-Vesta 23 East LLC | 87-1591974 | 236 | http://www.23easttulsa.com/ | 8/6/2021 |
| 10 | **Villas at Midtown** | Tulsa, OK | Tulsa County | 2001 E Skelly Dr Tulsa, OK 74105 | Villas at Midtown Best Living, LLC | 87-2354319 | 476 | https://www.thevillasatmidtown.com/ | 9/27/2021 |
| 11 | **Putnam Green** | Oklahoma City, OK | Oklahoma County | 7525 Knight Lake Dr Oklahoma City, OK 73132 | Auerbach-Vesta, LLC | 87-1356564 | 250 | http://www.putnamgreenokc.com/ | 9/30/2021 |
| 13 | **Riverpark at Kensington** | Tulsa, OK | Tulsa County | 7803 S Wheeling Ave Tulsa, OK 74136 | Riverpark Best Living, LLC | 87-3854186 | 400 | http://www.riverparktulsa.com/ | 12/17/2021 |
| 14 | **Drexel Flats** | Oklahoma City, OK | Oklahoma County | 8800 Drexel Ave, Oklahoma City, OK 73159 | Drexel Flats Acquisition LLC and Drexel Flats Acquisition TIC LLC | 87-2977919 | 400 | https://www.drexelflats.com/ | 12/21/2021 |
| 15 | **The Ridge** | Midwest City, OK | Oklahoma County | 3834 N Oak Grove Dr. Midwest City, OK 73110 | Ridge Best Living, LLC | 87-3666156 | 278 | https://www.theridgeokc.com/ | 12/21/2021 |
| 16 | **Lofts at North Penn** | Edmond, OK | Oklahoma County | 15501 N Pennsylvania Ave Edmond, OK 73013 | Lofts at North Penn Best Living LLC | 87-3974188 | 192 | https://www.loftsatnorthpennokc.com/ | 12/28/2021 |
| 17 | **Village Creek at 67th** | Tulsa, OK | Tulsa County | 6630 S Zunis Ave Tulsa, OK 74136 | A-V Village Creek Owner, LLC | 87-4248838 | 226 | http://villagecreektulsa.com/ | 2/1/2022 |
| 19 | **727 Lofts** | Jenks, OK | Tulsa County | 727 E Main Pl Jenks, OK 74037 | 727 Lofts Best Living LLC | 88-0597639 | 99 | http://727loftsapartments.com/ | 3/10/2022 |
| 20 | **Muntage** | Oklahoma City, OK | Oklahoma County | 3041 NW 41st St Oklahoma City, OK 73112 | Muntage Best Living, LLC | 88-1313164 | 165 | www.muntageapartmentsokc.com | 4/8/2022 |
| 23 | **Bryan Hill** | Bethany, OK | Oklahoma County | 7204 NW 36th St, Bethany, OK 73008 | Bryan Hill's Best Living, LLC | 88-3127477 | 232 | https://www.bryanhillapartments.com/ | 8/4/2022 |
| 24 | **Springdale Village** | Oklahoma City, OK | Oklahoma County | 4330 S Barnes Ave Oklahoma City, OK 73119 | Springdale Village's Best Living, LLC | 88-3346904 | 128 | https://www.springdalevillageapartments.com/ | 8/4/2022 |
| 25 | **Summer Oaks** | Oklahoma City, OK | Oklahoma County | 5770 NW 16th St Oklahoma City, OK 73127 | Summer Oaks Best Living, LLC | 88-3236660 | 197 | https://www.summer-oaksapartments.com/ | 8/4/2022 |
| 26 | **One Eton Square** | Tulsa, OK | Tulsa County | 8111 E 60th St Tulsa, OK 74145 | One Eton Square, LLC and One Eton TIC 1, LLC | 88-3432402 and 88-3769458 | 448 | https://www.oneetonsquare.com/ | 9/21/2022 |
| 27 | **Woodland Manor** | Tulsa, OK | Tulsa County | 8641 E 61st St, Tulsa, OK 74133 | Woodland Manor's Best Living, LLC and Woodland Manor TIC 1, LLC | 88-2671446 and 88-3834314 | 305 | https://www.woodlandmanorapt.com/ | 10/18/2022 |
| 28 | **Eaton Place** | Wichita, KS | Sedgwick County | 517 E Douglas Ave, Wichita, KS 67202 | Eaton Place Best Living, LLC and Eaton Place TIC 1, LLC | 92-1099454 and 92-1343742 | 117 | www.eatonplace-apts.com/ | 12/29/2022 |
| 29 | **WoodScape Apartments** | Oklahoma City, OK | Oklahoma County | 4200 N Meridian Ave, Oklahoma City, OK 73112 | B & J WoodScape/Oklahoma City LLC | 68-0382738 | 498 | https://www.woodscapeokc.com/ | 4/21/2023 |
| 30 | **Copperfield Apartments** | Oklahoma City, OK | Oklahoma County | 2400 NW 30th St, Oklahoma City, OK 73112 | Copperfield Apartments Limited Partnership | 73-1566907 | 262 | https://www.copperfieldokc.com/ | 7/14/2023 |
| 31 | **The Capitol on 28th** | Oklahoma City, OK | Oklahoma County | 215 NE 28th St, Oklahoma City, OK 73105 | TRDwind Capitol, LLC | 83-0935471 | 231 | https://www.cap28okc.com/ | 2/15/2024 |
| 32 | **Remington Ranch** | Stillwater, OK | Payne County | 1815 N Boomer Road, Stillwater, OK 74075 | Remington Ranch's Best Living, LLC | 93-4729611 | 292 | https://remingtonranchstillwater.com/ | 4/29/2024 |
| | | | | | | | | | |
| | | | | | Total Units | | **7,492** | | |