**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 26-33110** |
| **LOUIS INVESTMENTS, LLC,** | § | |
| **Debtor.** | § | **CHAPTER 11** |
| ______________________________ | § | |
| | | |
| **LOUIS INVESTMENTS, LLC,** | § | **ADVERSARY PROCEEDING** |
| **Plaintiff,** | § | |
| **v.** | § | **CASE NO. 26-03071-sgj** |
| **YSA INVESTMENTS 1, LLC,** | § | |
| **Defendant.** | § | |
| ______________________________ | § | |

**DECLARATION OF PETER J. AUERBACH IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Peter J. Auerbach, under penalty of perjury, declare and state as follows:

1. I am the manager of several investment funds known generally as the "Auerbach Funds." The Auerbach Funds hold a majority or controlling interest (including major-decision-approval authority in some cases) in the entities that own a number of the properties in which debtor Louis Investments, LLC, has a minority or asset-management role.[1]

2. Our interests form part of multi-tiered ownership structures for each property.

3. The properties in which we have ownership positions collectively contain over 2500 rental units.

[1] Among the entities are One Eton Square; Remington Ranch; Village Creek at 67th; Copperfield Apartments; and 23 East. Remington Ranch is a chapter 11 debtor in a case pending in this court (Case No. 26-32804).

4. The Auerbach Funds comprise scores of investors. Collectively, the Auerbach Funds have about $60 Million invested in the properties and ownership entities.

5. Before YSA Investments 1, LLC, and the Diveroli family started to try to take our properties, we had never had any interactions or dealings with them in any capacity. Our entities never communicated with them, never borrowed money from them, never guaranteed a loan made by them, never had a contract with them, never executed a power of attorney for them, never received any proceeds of a loan from them, and never authorized the placement of a lien on our real estate.

6. We were never approached by YSA Investments or by Marc Kulick to ask if we would be a guarantor or a borrower on a loan involving YSA Investments or the Diveroli family. We never executed any documents establishing any obligation to YSA Investments or the Diveroli family.

7. I learned after the fact that Marc Kulick and one of his entities borrowed money from YSA Investments and that the loan was secured by Mr. Kulick's or the entity's membership interests in certain partnerships, including ones in which we are investors. But the owners of the underlying real estate and apartment complexes had no role in that loan, did not guarantee it, and did not pledge any assets to secure it.

8. I understand that the loan that is the source of all of the litigation and problems now engulfing all 32 properties identified in the moving papers, had a principal amount of approximately $300,000.

9. It is my understanding that YSA Investments asserts a lien on assets totaling in excess of $500 Million to secure the loan in the principal amount of $300,000.

10. To the best of my knowledge, YSA Investments does not have a money judgment against any of the owners of the properties or even against Mr. Kulick relating to the $300,000 loan.

11. Through physical force and unauthorized self-help—rather than through established court process—YSA Investments and its agents unilaterally ousted the owners from possession and usurped debtor Louis Investments' managerial control over the assets. The impact of this illegal takeover has been immediate and severe. I believe the economic and reputational damages caused by this takeover are already substantial, and that further damage is occurring every minute we are locked out of our own assets.

12. Each of the properties has preexisting operating plans, budgets, contractual agreements with vendors, and leases—all of which are now not under the control of the owners, but rather under the control of an unaccountable third party with whom we have no contractual, legal, or financial relationship.

13. Tenant relations, employee relations, leasing decisions, income receipt, and expense obligations are now outside the control of the owners—not as the result of lawful court process but by the exercise of unsanctioned physical force.

14. On these properties, the owners (including the Auerbach Funds) entrusted debtor Louis Investments with managerial control—subject, of course, to many requirements in our operating agreements and otherwise, including major-decision-approval control, budget control, and limits on wires and outflows. Through the unauthorized actions of YSA Investments and the Diveroli family, Louis Investments' rights and obligations (as well as the rights of the underlying investors and lenders) have been effectively usurped—not as the result of lawful process but by the exercise of force.

15. YSA Investments, who is now exerting control over our properties, has no legitimate or long-term interest in the properties' well-being, which makes this situation particularly dangerous for the properties and our investors.

16. Moreover, each of the properties has lenders whose position comes ahead of any claimed position of YSA Investments, and if those entities are not paid, that could lead to default and foreclosure—which would wipe out the interests of innocent investors.

17. YSA Investment's conduct to date has created severe operational chaos and reputational harm. For example, YSA Investments' unauthorized second mortgages on the properties thwarted a thoroughly negotiated refinancing on one of the assets, which refinancing would have satisfied existing debt and funded capital improvements. That same interference effectively froze attempts at other refinancings that I believe would have satisfied senior lenders and provided funds for the assets. YSA Investments caused the bank which had been holding property-level operating accounts for all assets to freeze the accounts—not pursuant to a lawfully issued garnishment but just by threats and demands to turn over the funds. YSA Investments even filed suit against our property-management software and rent-collections servicer, trying to gain control of the rents due to our partnership with debtor Louis Investments. (I understand that YSA Investments dismissed that suit voluntarily before the court could address it.)

18. By physically seizing the assets and threatening employees with trespass citations simply for reporting to work, YSA Investments and the Diveroli family has disrupted our operations and fostered so much instability that, in my opinion, they have rendered the multi-million-dollar investments of the investors in the Auerbach Funds worthless. And I have no assurance that damages could be collectible from YSA Investments and the Diveroli family.

19. Allowing YSA Investments to act this way can also be expected to result in further confusion and risk for our tenants and employees. The chaos and unapproved interference have already impaired and will continue to impair the properties' ability to operate effectively and for the benefit of the owners, the investors, and the estates of debtor Louis Investments and other debtor and non-debtor entities. I believe that YSA Investment's possession of the properties, and the exclusion of the owners and Louis Investments, will substantially decrease the assets' values. Buyers, sellers, and lenders require certainty and stability, neither of which is achievable when there are forcible, unadjudicated changes in operational and legal control.

20. The owners are entitled to have their properties back under their control while all the various claims and arguments are resolved. If our properties are left in the hands of YSA Investments and the Diveroli family much longer, I fear that there will be nothing left to return to us.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

July 24, 2026

Peter J. Auerbach DATE



#542061891_v2