Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas St.
Ennis, TX 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
*Proposed Attorneys for Debtor / Plaintiff*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **LOUIS INVESTMENTS, LLC,** | § | **CASE NO. 26-33110** |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |
| | § | |
| | § | |
| **LOUIS INVESTMENTS, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **ADVERSARY PROCEEDING** |
| **v.** | § | |
| | § | **CASE NO. 26-03071-sgj** |
| **YSA Investments 1, LLC,** | § | |
| | § | |
| **Defendant.** | | |

**DECLARATION OF KENDRA BUTTERFIELD**

STATE OF OKLAHOMA )
)
COUNTY OF _________ )

I, Kendra Butterfield, declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. My name is Kendra Butterfield. I am over eighteen years of age, of sound mind, and competent to make this Declaration. I have personal knowledge of the facts stated herein and they are all true and correct. I make this Declaration in support of Plaintiff Louis Investments,

LLC's Emergency Motion for Temporary Restraining Order [Dkt #3].

2. I am employed by Vesta Realty as a Regional Property Manager. I began working for Vesta Realty in approximately May 2025. In my position, I report directly to Ben Didier and ultimately to Marc Kulick. I oversee the management and operations of Woodland Manor (Woodland Manor Best Living, LLC), Barcelona Apartments (Barcelona Best Living, LLC), Riverpark at Kensington (Riverpark's Best Living, LLC), and 727 Lofts (727 Lofts Best Living, LLC) in Tulsa, OK. I also oversee a property that Vesta Realty manages for an unrelated third-party ownership group.

3. My responsibilities include supervising onsite employees, overseeing property operations, addressing resident concerns, coordinating vendors and supplies, and assisting with the financial and operational management of the properties.

**Background on Louis Investments' Properties**

4. Beginning around July or August 2025, I became aware of increasing cash-flow difficulties affecting certain properties managed by Vesta Realty.

5. Despite these financial difficulties, Vesta Realty continued operating the properties and providing services to residents. We managed available cash carefully and, when necessary, requested the use of company credit cards to purchase supplies and address property needs.

6. Before the events described below, I understood that the ownership and management teams were working on a restructuring plan. That plan included potentially selling properties with substantial equity, using the proceeds to reduce debt, and restructuring remaining obligations through Chapter 11.

7. The largest issue the Tulsa properties have faced is Trash. We have addressed this issue repeatedly both prepetition and postpetition. We contracted with a new servicer, Eco Waste,

a reputable trash servicer in Tulsa, to improve our ability to address these certain properties. I worked with a member of their sales team, Tiffany, to get contracts signed. We had phone conversations this past week about starting trash delivery the week of July 20th. My emails with Eco Waste's sales representative are attached here as **Exhibit "A."**

8. Due to YSA Investments 1, LLC's takeover in Tulsa, this vendor pulled all contracts until the issue is resolved. This affects the property that I myself live in – Woodland Manor (Woodland Manor Best Living, LLC). The actions of YSA Investments 1, LLC have ruined our ability to service waste at every Tulsa property.

9. From July 14, 2026 through July 23, 2026, we have been able to complete 29 work orders at Woodland Manor, even with the ongoing bankruptcy and loss of the Trash Vendor service with Eco Waste. The work order report is attached here as **Exhibit "B."** We have a maintenance team on site still working to help residents with their needs.

10. At the Barcelona property (Barcelona Best Living, LLC), the main maintenance issue that I am aware of is an issue with one unit regarding a small amount of mold. The resident had either been transferred or released from their lease (I do not know the unit number). I know that there were roof repairs in progress by a Vesta contractor with Saldierna Remodeling.

11. At the Riverpark at Kensington property, a resident had complained about a water leak and mold to the City. The City of Tulsa came out, but by that time the Vesta team had already made the necessary repairs. The property manager explained to the city why there was a hole in the ceiling to allow the ceiling to dry.

12. I am not aware of any severely mold-affected units at any of the properties I oversee. The first pictures I saw of anything were on the news and I could not tell which property(ies) they were at.

**<u>Events on July 20, 2026</u>**

13. On Monday, July 20, 2026, at approximately 9:47 a.m., representatives associated with YSA and Capital Assets arrived at River Park at Kensington accompanied by officers from the Tulsa Police Department.

14. I arrived at River Park at approximately 10:00 a.m. after learning what was occurring at the property. When I arrived, I observed that the onsite manager, Sherri, was visibly upset and experiencing significant emotional distress. I asked to see Sherri in her office, and as I was walking back, I heard a "get her" at which time a police officer came to Sherri's office door.

15. I overheard conversations between Capital Assets representatives, YSA, and the police. At some point, someone said "we will be taking all Vesta employees because they can't keep the property if they have no staff."

16. I was told by Sherri Stewart that they provided an order, or document of some kind; she was not sure, but she said it was on the table in the clubhouse. When I walked out and asked about the order, the rep from YSA grabbed the paperwork and walked out the door. No paperwork was shown to Vesta about the rights YSA or the police may have had to evict ownership from the property.

17. While I was at Riverpark, YSA and Capital Assets were attempting to force the Vesta employees to make a decision under what I considered to be emotional duress on whether or not they were taking a job with Capital Assets. Many people were crying and stressed, so as a mental health first aider, I told the team to leave the property, go cool off (because it was extremely hot that day), have some lunch, and then make their decision. I stated in the room in front of all parties that I was not stopping the team from talking with Capital Assets, but I was concerned for the mental health of my team at that time.

18. I attempted to support the onsite employees and determine what authority YSA and Capital Assets claimed to have to take control of the property. Tulsa Police Officer Rice instructed me to leave the property. During the incident, Officer Rice threatened to arrest me approximately three times if I did not leave. I was told that I was being trespassed from the property. However, I was not shown a written trespass notice, court order, writ of possession, or other legal document authorizing my removal or authorizing YSA to take possession of the property.

19. Because of Officer Rice's repeated threats to arrest me, I left the property.

20. During the incident, I observed representatives associated with YSA pressuring Vesta Realty employees to make immediate decisions about whether they would leave Vesta Realty and work for a different management company.

21. The employees were already under significant emotional stress when they were asked to make these employment decisions.

22. Employees were led to believe that if they did not agree immediately, they might not be offered employment with the replacement management company.

23. Based on what I personally observed, the employees did not have a meaningful opportunity to consider their options or obtain advice before being required to make a decision.

24. Following the incident, I learned that the Tulsa Police Department provided Ben Didier with a citation but did not provide the complete police report concerning the incident. As of the date of this Declaration, I have not received or reviewed the complete police report.

25. Later that day, I became aware of similar efforts to take control of Barcelona Apartments and Thrive Jenks (Jenks Best Living, LLC).

26. These events have disrupted Vesta Realty's ability to manage the affected properties and supervise its employees.

27. The uncertainty concerning who has authority to operate the properties has also created confusion and fear among residents.

28. I have personally observed and received concerns from residents regarding the events surrounding the attempted takeover.

29. This concern has been particularly significant at Woodland Manor, where many residents are seniors. I have observed residents who were frightened and crying because of the uncertainty and news coverage surrounding the properties.

30. In my experience as a Regional Property Manager, continuity in property management is important to resident safety and welfare. Sudden changes in management authority can interfere with maintenance, vendor relationships, employee supervision, rent collection, emergency response, and communication with residents.

31. The actions taken on July 20, 2026, have made it substantially more difficult for Vesta Realty to perform these responsibilities at the affected properties. Before July 20, Vesta Realty and the ownership team were working with outside parties regarding potential funding, property sales, and restructuring efforts.

32. Since the attempted takeover, those outside parties have been unwilling or unable to proceed while the dispute over possession and management authority remains unresolved. As a result, the attempted takeover has interfered with Vesta Realty's operations and the ownership team's ability to implement its proposed restructuring plan.

33. Unless the parties' respective rights and authority are promptly clarified, I believe the disruption will continue to harm property operations, employees, residents, and the ownership's restructuring efforts.

EXECUTED this 24th day of July, 2026.

Kendra Butterfield
Regional Property Manager
Vesta Realty