**DECHERT LLP**
Marcus A. Helt (TX 24052187)
Debbie E. Green (TX 24059852)
Jack G. Haake (TX 24127704)
2651 N. Harwood Street, Suite 120
Dallas, Texas 75201
Telephone: (214) 453-4900
marcus.helt@dechert.com
debbie.green@dechert.com
jack.haake@dechert.com

**DECHERT LLP**
Jerry L. Hall (admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
jerry.hall@dechert.com

*Counsel for YSA Investments 1, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **In re:**<br><br>**LOUIS INVESTMENTS, LLC,**<br><br>**Debtor.** | **CASE NO. 26-33110-sgj**<br><br>**CHAPTER 11** |
| **LOUIS INVESTMENTS, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**YSA INVESTMENTS 1, LLC,**<br><br>**Defendant.** | **ADV. PRO. NO.: 26-03071** |

**DEFENDANT YSA INVESTMENTS 1, LLC'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... 3

PRELIMINARY STATEMENT .......... 1

FACTUAL AND PROCEDURAL BACKGROUND .......... 2

A. The Various Bankruptcy and Legal Proceedings Involving Plaintiff .......... 2

B. The Delaware Court of Chancery Validated YSA's Rights After a Full Trial .......... 4

C. YSA Exercised the Rights Upheld in Delaware .......... 5

D. The Maryland Bankruptcy Court Declined to Disturb YSA's Possession .......... 5

ARGUMENT .......... 6

I. THE DELAWARE JUDGMENT PRECLUDES RELITIGATION OF THE PREMISE ON WHICH THE MOTION DEPENDS .......... 6

A. Collateral Estoppel Bars Relitigation of the Issues on Which This Motion Depends .......... 8

B. The Rooker-Feldman Doctrine Independently Counsels Against Relitigation of the Delaware Judgment .......... 11

C. The Maryland Bankruptcy Court's July 24, 2026 Ruling Confirms That the Appropriate Relief, If Any, Is Preservation—Not Restoration of Vesta Realty .......... 12

II. PLAINTIFF CANNOT MEET THE HEIGHTENED STANDARD FOR THE MANDATORY INJUNCTION IT SEEKS .......... 14

A. Plaintiff Has Not Made the Clear Showing of Likely Success Required for Mandatory Injunctive Relief .......... 15

1. Louis Investments Has No Cognizable § 541 Estate Interest in the Subject Properties .......... 15

2. Kulick's Prior Sworn Testimony Contradicts the Evidentiary Foundation of the Motion .......... 17

3. Louis Investments Fails to Support Its Overbroad Motion with Any Evidence Regarding the Vast Majority of the Subject Properties .......... 18

B. Plaintiff Has Not Demonstrated Irreparable Harm .......... 19

C. The Balance of Equities Strongly Favors Maintaining the Existing Legal Status Quo 20

D. The Public Interest Favors Preserving the Existing Legal Status Quo Pending a Decision on the Merits ........................................................................................ 21

III. PLAINTIFF LACKS AUTHORITY TO COMMENCE THIS CASE OR SEEK EXTRAORDINARY EQUITABLE RELIEF ................................................................. 22

IV. ANY RELIEF SHOULD BE CONDITIONED ON SECURITY UNDER RULE 65(C) 24

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Amarex, Inc. v. El Paso Natural Gas Co.*, 1987 OK 48 (Okla. 1987) .......... 22

*Anyadike v. Vernon Coll.*, 2016 U.S. Dist. LEXIS 3161 (N.D. Tex. Jan. 11, 2016) .......... 19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) .......... 11

*First Sec. Bank v. W&W Farms, Inc.*, 2020 U.S. Dist. LEXIS 18097 (N.D. Tex. Feb. 4, 2020) . 20

*Hunn v. Dan Wilson Homes, Inc.*, 2014 WL 12584308 (N.D. Tex. Jan. 29, 2014) .......... 18

*In re Abbott*, 809 F. App'x 200 (5th Cir. 2020) .......... 14

*In re Chesnut*, 422 F.3d 298 (5th Cir. 2005) .......... 16

*In re Columbia Pipeline Grp.*, 2021 WL 772562 (Del. Ch. Mar. 1, 2021) .......... 10, 11

*In re Moran*, 413 B.R. 168 (Bankr. D. Del. 2009) .......... 8

*In re Three Strokes Ltd. Partnership*, 397 B.R. 804 (Bankr. N.D. Tex. 2008) .......... 16

*In re WC 1st & Trinity GP, LLC*, 2021 U.S. Dist. LEXIS 252285 (W.D. Tex. Mar. 18, 2021) .. 23

*In re Westec Corp.*, 460 F.2d 1139 (5th Cir. 1972) .......... 16

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) .......... 19

*Lance v. Dennis*, 546 U.S. 459 (2006) .......... 11

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985) .......... 8

*Montana v. United States*, 440 U.S. 147 (1979) .......... 10

*Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 697 F. Supp. 3d 601 (N.D. Tex. 2023) .......... 19

*Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624 (N.D. Tex. 2022) .......... 22

*Shimon v. Sewerage & Water Bd. of New Orleans*, 565 F.3d 195 (5th Cir. 2009) .......... 8

*State v. Biden*, 10 F.4th 538 (5th Cir. 2021) .......... 19

*Taylor v. Sturgell*, 553 U.S. 880 (2008) .......... 10

*TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322 (5th Cir. 2025)................................. 14, 15

*Trifinity Sols., LLC v. Seay Money Prods.*, LLC, 2026 U.S. Dist. LEXIS 154941 (N.D. Tex. May 6, 2026) ........................................................................................................................ 19

*Union Planters Bank, Nat'l Ass'n v. Salih*, 369 F.3d 457 (5th Cir. 2004)................................... 11

*United States v. Lucas*, 338 F. Supp. 3d 139 (W.D.N.Y. 2018) .................................................. 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................................................... 14

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................... 19

11 U.S.C. § 362(k)(1) ....................................................................................................... 19

11 U.S.C. § 541(a)(1)....................................................................................................... 15

**Other Authorities**

Fed. R. Bankr. P. 7065 ..................................................................................................... 24

Fed. R. Civ. P. 65(c) ........................................................................................................ 24

Restatement (Second) of Judgments § 41 cmt. e ............................................................ 11

## PRELIMINARY STATEMENT

Plaintiff Louis Investments, LLC ("Plaintiff" or "Louis Investments") seeks an emergency temporary restraining order that would, in effect, restore operational control of a portfolio of multifamily apartment properties to the very management structure that stands accused of fund misappropriation, fraudulent transfers, Ponzi-like commingling of rents, and the wholesale failure to maintain residential housing for hundreds of tenants across Oklahoma, Kansas, and Arkansas. The Motion is built around the spectacle of a single morning's events at the Riverpark at Kensington property on July 20, 2026—and it largely omits the years-long history that produced those events.

The chronology tells the real story. On November 13, 2025, Marc Kulick and his personal investment vehicles sued YSA in the Delaware Court of Chancery to invalidate the very mortgages and security interests that underlie YSA's claimed rights across the Louis/Vesta portfolio. Kulick sought a preliminary injunction and lost it, the Chancery Court holding that relief would alter rather than preserve the status quo and conditioning any interim relief on security of approximately $22.37 million—security Kulick never posted. The case proceeded to trial. After live testimony from Kulick himself and more than two hundred exhibits, the Delaware Court entered judgment for YSA on June 9, 2026, upholding the authority on which YSA's interests rest. Three days later, a wave of Kulick-affiliated entities commenced bankruptcy filings—first in the Western District of Oklahoma, then here. On July 20, 2026, Louis Investments filed this case and this Motion on the same day, framing YSA's exercise of title rights as a stay violation while concealing that those rights were validated after a full trial.

The Motion fails for four independent reasons. First, YSA holds recorded title to the Subject Properties pursuant to deeds executed and recorded before the petition date—title whose

validity was upheld after a full trial in the Delaware Court of Chancery. Plaintiff's automatic-stay theory depends on the premise that those conveyances are void and that Louis Investments retains cognizable estate interests in the Subject Properties, but that premise is, at best, disputed—and the dispute cannot be resolved in Plaintiff's favor on an emergency record where a court of competent jurisdiction has already tried the underlying authority questions and ruled against Kulick. Second, even if the Court reaches the standard TRO factors, Plaintiff seeks mandatory relief that restores an altered status quo, triggering a heightened burden Plaintiff cannot meet. Third, Plaintiff cannot demonstrate irreparable harm where the Bankruptcy Code provides statutory avoidance remedies and where Plaintiff's own management record demonstrates the greater danger to tenants lies in restoring Plaintiff to control. Fourth, the public interest strongly disfavors emergency judicial intervention that would award Plaintiff effective control of a multi-property portfolio before the underlying title and authority questions are adjudicated. The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Various Bankruptcy and Legal Proceedings Involving Plaintiff

Louis Investments is a Kansas limited liability company purportedly controlled by Marc Kulick. Kulick also manages Vesta Realty, LLC ("Vesta Realty"), the operating arm overseeing approximately 7,492 apartment units across Oklahoma, Kansas, and Arkansas through a network of individual property-owning LLCs. Louis Investments describes itself as the "direct or indirect manager of most of the Title Owners," Mot. ¶ 20, but does not itself hold title—ownership is at the individual property-owner LLC level. Louis Investments was formed as the upstream manager of Riverpark Best Living, LLC, owner of a multifamily apartment complex. Compl. ¶¶ 21–22.

On June 12, 2026, four related Kulick-affiliated debtors filed Chapter 11 cases in the United States Bankruptcy Court for the Western District of Oklahoma: Fairfax Investors, LLC (No. 26-11984); Fairfax Best Living, LLC (No. 26-11985); Woodland Oaks Best Living, LLC

(No. 26-11986); and Woodland Oaks Investors, LLC (No. 26-11987). *See* App'x Exs. 1–4. Each debtor is wholly owned by an entity that is believed to be singularly controlled by Marc L. Kulick. See App'x Exs. 5–8 (List of Equity Security Holders—No. 26-11984 (Vesta Fairfax, LLC); No. 26-11985 (Fairfax Holding Company, LLC); No. 26-11986 (W.O. Sole Member, LLC); No. 26-11987 (W.O. Holding Co., LLC)). Kulick has used these entities as "personal investment vehicles" to manage an interconnected, commingled web of investments. *See* App'x Ex. 9 (Post-Trial Mem. Op., Del. Ct. of Chancery, C.A. No. 2025-1319-KSJM) at APP 33, 47 n.107.

Shortly before these Chapter 11 filings, a receiver was appointed over the debtors in Oklahoma County based on trial court findings that Kulick has a habit of siphoning funds for improper use. App'x Ex. 10 (Okla. Receiver Order); App'x Ex. 9 at APP 37 n.107. The Delaware Court of Chancery specifically found—and Kulick admitted—that he commingled personal funds with Vesta's to create a "lending pool" to move cash between properties and pay one property's debts with another's proceeds, a practice confirmed by a forensic accountant's review of his bank accounts. App'x Ex. 9 at APP 37 n.107.

Kulick and certain investment entities were sued on June 25, 2026 in the Northern District of Oklahoma for racketeering, including wire fraud, mail fraud, and money laundering. App'x Ex. 11 (*Upperman v. Kulick*, 4:26-cv-383 (N.D. Okla. June 25, 2026), Verified Compl. ¶¶ 86–100). A forensic accountant (American Fiduciary Services) found account activity "highly correlated with classic Ponzi-like schemes and highly demonstrative of commingled sources and uses of funds," including more than $5 million in transfers to pay personal credit cards and automobile loans, "up to $37,473,988 in credit-card charges with no apparent business purpose; $10,241,940 in net transfers to Kulick-controlled accounts through 93 transactions; and $4,406,608 in disbursements to Raymond James & Associates," among other suspect transactions. *Id.* ¶¶ 34–35.

On June 12, 2026, Fannie Mae sued Kulick and Vesta in the Western District of Oklahoma, similarly alleging that they collect "almost $2 million in rents every month" that is "not being used to maintain the property, make repairs, protect the tenants, or pay off liens . . . but presumably is being diverted for undisclosed purposes," and that Kulick and Vesta are "currently defending more than 15 lawsuits that, in the aggregate, allege he owes the various plaintiffs more than $100 million." App'x Ex. 12 (*Fed. Nat'l Mortg. Ass'n v. Kulick*, 5:26-cv-1400 (W.D. Okla. June 12, 2026), Compl. ¶ 29 & n.1).

Since the Delaware Court of Chancery entered judgment for YSA on June 9, 2026, Kulick-affiliated entities have filed no fewer than fourteen bankruptcy cases across three federal districts—eight in this Court, four in the Western District of Oklahoma, and two in the District of Maryland—all involving properties or entities within the same Vesta/Louis portfolio and all placing YSA's interests at issue. It is against that backdrop that this proceeding was filed on July 20, 2026, seeking to unwind YSA's acquisition of the Riverpark at Kensington Apartments in Tulsa, Oklahoma.

**B. <u>The Delaware Court of Chancery Validated YSA's Rights After a Full Trial</u>**

On November 13, 2025, Kulick and his personal investment vehicles commenced litigation in the Delaware Court of Chancery seeking to invalidate the second mortgages YSA had recorded against properties in the Louis/Vesta portfolio. Kulick moved for a preliminary injunction and lost; the Court held that the requested relief would alter rather than preserve the status quo and conditioned any interim relief on approximately $22.37 million in security, which Kulick did not post. The case proceeded to trial with live testimony—including from Kulick—and more than two hundred exhibits. The Court of Chancery entered judgment for YSA on June 9, 2026, finding that: (i) Kulick controlled or managed the title-owning entities across the portfolio; (ii) a Joinder Kulick himself proposed bound the title-owning entities as additional pledgors under the Collateral Pledge

and Security Agreements; (iii) the governing Power of Attorney authorized YSA, in its sole discretion, to take action against the real property owned by those entities; and (iv) YSA properly exercised that authority by recording mortgages against the Subject Properties. Those findings directly determine the validity of the interests on which YSA's claimed rights in the Subject Properties rest.

### C. <u>YSA Exercised the Rights Upheld in Delaware</u>

After the Court of Chancery issued its post-trial opinion, YSA exercised the contractual rights recognized in that decision. A Special Warranty Deed conveying the Riverpark Property to YSA was recorded in the Tulsa County land records on June 18, 2026—more than a month before the commencement of Louis Investments' bankruptcy case. See App'x Ex. 18 (Special Warranty Deed for Riverpark). On July 20, 2026—the same day Louis Investments filed this bankruptcy and this Motion—YSA, accompanied by Tulsa Police Department officers and representatives of Capital Assets (a property management company), appeared at the Riverpark at Kensington property, as the record title holder. Kulick and Vesta Realty personnel were present. When informed of the bankruptcy, Officer Rice stated that YSA "has a deed" and that the bankruptcy was "not my concern." Vesta Realty personnel left the property under threat of trespass tickets and arrest. YSA also changed locks at three properties already in bankruptcy: 727 Lofts Best Living, Barcelona Best Living, and A-V Village Creek Owner LLC. Louis Investments frames these events as automatic stay violations. YSA's position is that its actions were the exercise of rights upheld after full trial in Delaware, against a debtor whose estate interests in upstream management are, at most, arguable rather than established.

### D. <u>The Maryland Bankruptcy Court Declined to Disturb YSA's Possession</u>

On July 20, 2026, Jenk's Best Living, LLC—the Kansas entity affiliated with Kulick that owns the Thrive apartment complex in Jenks, Oklahoma, subject to the same YSA loan documents

and power-of-attorney at issue here—filed an adversary proceeding in the United States Bankruptcy Court for the District of Maryland (Case No. 26-17758-MMH; Adv. No. 26-00176-MMH), and moved on an emergency basis for a temporary restraining order seeking, among other things, to restore it to possession and operational control of the property. The Maryland court held an emergency hearing on July 22, 2026, and issued its Preliminary Order on July 24, 2026. *See* App'x Ex. 13 (*In re Jenk's Best Living, LLC*, No. 26-17758-MMH, Adv. No. 26-00176-MMH (Bankr. D. Md. July 24, 2026, Order). Despite hearing arguments that YSA's claimed ownership and title rested on invalid instruments and should be unwound—the same foundational question underlying Louis Investments' challenge here—the court declined to restore the debtor to possession or unwind YSA's acquisition of title. Instead, it allowed YSA to remain in possession and to collect rents from the property, requiring only that those proceeds be reinvested into the property's maintenance and operation, that excess funds be held in reserve, and that YSA file periodic accountings pending further order of the court. The court expressly acknowledged the significance of the Delaware Chancery Court's decision and calibrated its order to respect that ruling.

## ARGUMENT

### I. THE DELAWARE JUDGMENT PRECLUDES RELITIGATION OF THE PREMISE ON WHICH THE MOTION DEPENDS

Louis Investments asks this Court to grant, on an emergency basis, substantially the same relief it seeks at the end of this adversary proceeding: to unwind completed prepetition conveyances, divest YSA of recorded title, and restore Plaintiff to operational control of more than 7,400 apartment units across thirty-plus properties. Stripped of its emergency framing, the Motion asks this Court to enter an order directly contrary to a judgment entered against Marc Kulick—Plaintiff's self-described manager and 100% owner—after a full trial on the merits in the Delaware

Court of Chancery.

The Motion largely omits the relevant chronology. On November 13, 2025, Kulick, Vesta Holdings, LLC, and Asset Holder, LLC sued YSA in the Court of Chancery to invalidate the very second mortgages Plaintiff now challenges. Kulick sought a preliminary injunction and lost: the Chancery Court held that the relief he requested would alter rather than preserve the status quo and conditioned any interim relief on security of approximately $22,368,257.93, which Kulick never posted. After live trial testimony from Kulick himself and more than two hundred exhibits, the Court of Chancery entered judgment for YSA on June 9, 2026, holding that the Joinder Kulick himself proposed bound the title-owning entities as additional pledgors, that the governing Power of Attorney authorized YSA to act against their real property in its sole discretion, and that YSA was entitled to record the mortgages.

What followed was a migration to the bankruptcy courts—but only after YSA had already recorded its deeds. YSA completed the conveyances by recording deeds in lieu of foreclosure for the Subject Properties in the applicable county land records well before any petition was filed. *See* App'x Ex. 18 (Special Warranty Deed for Riverpark, recorded June 18, 2026); App'x Ex. 19 (Special Warranty Deed for Village Creek, recorded June 18, 2026). Record title had passed to YSA, and the Delaware judgment had foreclosed the theory underlying every count of the Complaint, before Louis Investments commenced its Chapter 11 case on July 20, 2026 and filed this adversary proceeding. Plaintiff's own Witness and Exhibit List, filed July 24, 2026, confirms this sequence: Exhibits 28 and 29 are the YSA deeds in lieu for Riverpark and Village Creek, respectively—both predating the petition. *See, e.g., In re 727 Lofts Best Living*, *LLC*, No. 26-32779-sgj11 (Bankr. N.D. Tex. June 25, 2026); *In re Barcelona Best Living, LLC*, No. 26-33093-sgj11 (Bankr. N.D. Tex. July 9, 2026); *In re A-V Village Creek Owner, LLC*, No. 26-32922-sgj11

(Bankr. N.D. Tex. July 2, 2026). Only after YSA's title was a matter of public record did Kulick turn to the bankruptcy courts.

The Motion fails before the Court reaches the Rule 65 factors. First, collateral estoppel bars relitigation of the issues the Court of Chancery decided after a full trial—issues identical to those on which this Motion depends. Second, even if the Court reaches Rule 65, Plaintiff seeks mandatory relief that alters rather than preserves the status quo, triggering a heightened standard Plaintiff cannot meet. Third, the United States Bankruptcy Court for the District of Maryland, confronting the same underlying dispute on July 24, 2026, declined to restore the debtor to possession and instead imposed only preservation obligations on YSA—the correct template for any relief this Court might consider.

### A. <u>Collateral Estoppel Bars Relitigation of the Issues on Which This Motion Depends</u>

Under 28 U.S.C. § 1738, the Delaware judgment must receive the same preclusive effect Delaware courts would give it. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380–81 (1985); *Shimon v. Sewerage & Water Bd. of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009). Under Delaware law, collateral estoppel applies where: (i) the issue previously decided is identical to the one presented; (ii) the prior action was finally adjudicated on the merits; (iii) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (iv) that party had a full and fair opportunity to litigate. *In re Moran*, 413 B.R. 168, 181 (Bankr. D. Del. 2009). Each element is satisfied.

*Identical Issues*. Every claim in the Complaint shares a single premise: that Kulick lacked authority to subject the Title Owners' properties to YSA's collateral package, and that each instrument flowing from that authority is therefore void or avoidable. The Court of Chancery tried that premise and rejected it. After a trial at which Kulick testified and more than 220 joint trial

exhibits were admitted, the Court held:

- Kulick himself proposed expanding the collateral package through "a joinder to the portfolio as a whole" and instructed counsel to "add a joinder that joins any asset controlled by any affiliate of mine." App'x Ex. 9 at APP 64.

- Kulick controlled or managed the title-owning entities and executed the Joinder on their behalf. *Id.* at APP 59.

- By operation of the Joinder, the title-owning entities—including the entities that own the Subject Properties—became additional pledgors under the Collateral Pledge and Security Agreements. *Id.* at APP 59–60.

- The governing Power of Attorney authorized YSA, in its sole discretion, to "take whatever steps that it deems necessary" to "secure and protect its interests," including "taking any action against any of the Collateral or any real or personal property owned by the Collateral." *Id.* at APP 60. This power "is not tied to or limited by the definition of Collateral." *Id.* at APP 60–61.

- YSA properly exercised that authority by recording second mortgages on real property owned by the Collateral—i.e., the Subject Properties. *Id.* at APP 62–63.

Plaintiff now asks this Court to reach the opposite conclusion on the same questions against the same defendant that prevailed in Delaware after trial. Each holding was necessary to the judgment and each forecloses the premise on which this Motion depends—that YSA's interests in the Subject Properties arose from unauthorized acts. Nor were the Delaware court's findings limited to the specific instruments before it. The court directly addressed the broader portfolio of Title Owner properties at issue here, crediting Kulick's own testimony that he repeatedly recorded second mortgages on properties owned by Title Owners and that 32 of Vesta's 34 properties routinely needed cash—a shortfall Kulick addressed by commingling funds across the portfolio through a "lending pool" used to pay the debts of one property with proceeds from another. *Id.* at APP 47 n.107. The Delaware court thus examined the very network of Title Owner entities, and the management practices through which Kulick controlled them, that Plaintiff now places at the center of this Motion.

*Final Adjudication on the Merits*. The Court of Chancery entered a post-trial memorandum

opinion and judgment for YSA on June 9, 2026, following full discovery, briefing, and trial. S*ee* App'x Ex. 9. That is a final adjudication on the merits for purposes of collateral estoppel. Louis Investments' own conduct confirms it: the opinion appears as Exhibit 32 on Plaintiff's Witness and Exhibit List, without any notation that the judgment is stayed or on appeal. A party that affirmatively places a judgment in the record as its own exhibit cannot credibly dispute its finality.

*Privity*. Louis Investments is bound by the Delaware judgment because it was in privity with Kulick and the Vesta entities who litigated in Delaware. A nonparty is bound where it controlled or substantially participated in the prior litigation. *Montana v. United States*, 440 U.S. 147, 154 (1979); *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008). Under Delaware law, a nonparty is bound when it "controls or substantially participates in the control of the presentation on behalf of the party." *In re Columbia Pipeline Grp.*, 2021 WL 772562, at *16, 21 (Del. Ch. Mar. 1, 2021) (quoting Restatement (Second) of Judgments § 39).

Plaintiff will likely argue that Kulick sued in Delaware in his personal capacity and that Louis Investments was not named. That argument fails. On Kulick's own account, Kulick is Louis Investments—he is its sole owner and manager, and the Delaware court found that he "controls or manages the Title Owners," App'x Ex. 9 at 59, whose properties make up Louis Investments' management portfolio. Kulick cannot litigate the question of whether YSA has rights over those properties in Delaware, lose, and then repackage an identical challenge through the corporate entity through which his management rights flow. Moreover, Louis Investments has confirmed its relationship to the Delaware proceeding by placing the post-trial opinion on its own Witness and Exhibit List as Exhibit 32—an entity that treats another court's judgment as authoritative enough to introduce as evidence cannot simultaneously disclaim any connection for preclusion purposes. Finally, the relief Kulick sought in Delaware was relief for Louis Investments' direct benefit: the

second mortgages he sought to remove were recorded against the very properties over which Louis Investments asserts management rights here. The benefit of the Delaware action flowed to Louis Investments; the burden of the judgment must follow. *See* Restatement (Second) of Judgments § 41 cmt. e.

That Louis Investments is now a Chapter 11 debtor in possession is of no moment. The premise of preclusion is control at the time of the prior litigation, not at the time preclusion is invoked. A losing party cannot escape a judgment by filing bankruptcy. *See In re Columbia Pipeline Grp.*, 2021 WL 772562, at *21.

*Full and Fair Opportunity to Litigate*. Kulick had every opportunity: he filed suit, moved for a preliminary injunction, conducted discovery, participated in a trial, submitted post-trial briefing, and testified on the precise questions at issue here. Having had a full and fair opportunity to establish his position and having failed, Kulick and the entities he controls may not seek a second bite at the apple in this Court.

**B. The Rooker-Feldman Doctrine Independently Counsels Against Relitigation of the Delaware Judgment**

Beyond collateral estoppel, the Rooker-Feldman doctrine reflects a broader principle: federal courts, including bankruptcy courts, are not appellate courts for state-court losers. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Union Planters Bank, Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004). Although Rooker-Feldman applies most directly to named parties—and Louis Investments was not itself a named party in Delaware—the Supreme Court has recognized the open question whether the doctrine applies against a nonparty that "simply steps into the [state court plaintiff's] shoes" and seeks "de facto appellate review of a state-court judgment." *Lance v. Dennis*, 546 U.S. 459, 465–66 (2006). Louis Investments is doing precisely that: its Complaint asks this Court to declare that Kulick lacked authority to subject the

Subject Properties to YSA's collateral package—the identical question the Court of Chancery answered adversely to Kulick after trial. According to Kulick's own sworn declaration, Louis Investments is 100% owned and managed by him, he prosecuted the Delaware action on its behalf, and the relief he sought there was for Louis Investments' benefit. Asking this Court to reach the opposite conclusion is precisely what the Rooker-Feldman doctrine does not tolerate.

YSA does not invoke Rooker-Feldman as a wholesale jurisdictional bar to this adversary proceeding, which also asserts avoidance claims under 11 U.S.C. §§ 544, 547, 548, and 550 that are distinct federal bankruptcy causes of action. The principle does, however, support the conclusion that the contractual authority questions—whether the Joinder bound the Title Owners, whether the Power of Attorney authorized YSA's actions, and whether the mortgages and deeds in lieu of foreclosure were valid exercises of YSA's rights—may not be re-litigated on an emergency record in this Court. These questions have been tried and decided. Any claim for relief that requires a different answer to those questions fails at the threshold.

### C. <u>The Maryland Bankruptcy Court's July 24, 2026 Ruling Confirms That the Appropriate Relief, If Any, Is Preservation—Not Restoration of Vesta Realty</u>

On July 22, 2026, the United States Bankruptcy Court for the District of Maryland heard emergency argument on a TRO motion brought by Jenk's Best Living, LLC—one of the Title Owner entities in the same Kulick/Vesta portfolio—raising substantially identical claims against YSA. YSA opposed. On July 24, 2026, the Maryland court entered its Preliminary Order. See App'x Ex. 13.

The Maryland court's analysis is instructive and its outcome is telling. The court expressly acknowledged the Delaware post-trial opinion, observing that "the Delaware Chancery Court has issued an opinion addressing certain issues that may impact those before the Court" and that "the Delaware Chancery Court decision may not, in the end, affect the merits of a fraudulent transfer

action under section 548 of the Code, but at this early stage and on an interim basis, the Court feels compelled to recognize and respect a decision of that Court." *Id.* at APP 176. The court further noted that "the third and fourth factors are a closer matter for the Court, given the yet unresolved meaning of the Delaware Chancery Court's decision and potential grounds for YSA's actions under that decision." *Id.*

Critically, the Maryland court did not restore the debtor to possession. It did not displace YSA's management of the property. It did not require YSA to reinstall the debtor's former property manager. Instead, the court deliberately declined to address the automatic stay claims and grounded its limited relief solely on the debtor's fraudulent transfer claims under § 548—claims which are asserted in the parallel second adversary proceeding brought by the Title Owners here, not in this adversary proceeding brought by Louis Investments. *Id.* at APP 174–75.

The relief the Maryland court did grant reflects the correct balance. The court ordered YSA to: (i) maintain the subject property and take all steps reasonably necessary for its preservation; (ii) collect rents in accordance with applicable law and apply all proceeds to the ongoing maintenance, upkeep, operation, and preservation of the property; (iii) hold any excess proceeds in a separate reserve account pending further order; (iv) file regular accountings with the court; and (v) refrain from any further transfers, encumbrances, or dispositions of the property without court approval. *Id.* at APP 177–78. YSA remained in operational control.

That approach—preservation obligations on YSA, no restoration of the former management structure, and court supervision of rents and proceeds—is the appropriate model for any interim relief this Court might consider. Louis Investments' Motion seeks something categorically different: mandatory, immediate restoration of Vesta Realty to operational control of over thirty properties, withdrawal of instructions to law enforcement, return of keys, credentials,

and management offices, and production of communications—all on two days' notice and without any evidentiary record. The Maryland court, after hearing argument and reviewing the same underlying record, concluded that relief of that breadth was not warranted. This Court should reach the same conclusion.

The contrast in what Louis Investments seeks here versus what the Maryland court granted also reveals the mandatory nature of the relief sought. The Maryland order is prohibitory in character: it restricts what YSA may do going forward while leaving the current operational state intact. Louis Investments' proposed TRO order is mandatory in character: it commands affirmative acts—withdraw instructions, return property, restore management, produce documents—that would require undoing completed transactions and altering the petition-date status quo. Mandatory injunctive relief is disfavored and subject to a heightened standard. *TitleMax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328–29 (5th Cir. 2025). Prohibitory injunctive relief of the preservation type granted in Maryland, on the other hand, is available upon the ordinary Rule 65 showing—and even that lesser form of relief requires a showing Louis Investments has not made, as set forth in Section II below.

## II. PLAINTIFF CANNOT MEET THE HEIGHTENED STANDARD FOR THE MANDATORY INJUNCTION IT SEEKS

Federal Rule of Civil Procedure 65, made applicable by Federal Rule of Bankruptcy Procedure 7065, authorizes preliminary injunctive relief only upon a clear showing that the movant is likely to succeed on the merits, likely to suffer irreparable harm absent relief, that the balance of equities favors an injunction, and that the injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *In re Abbott*, 809 F. App'x 200, 201–02 (5th Cir. 2020). The movant bears the burden on each factor, and failure to establish any one of them defeats the request for extraordinary relief.

Plaintiff's burden is even greater because the relief requested is not prohibitory. Plaintiff does not ask the Court merely to preserve existing conditions while the parties litigate the merits. Rather, it seeks to divest YSA of record title, restore Plaintiff to operational control of the Property, and undo completed prepetition transactions. Such relief alters—not preserves—the status quo and therefore constitutes a mandatory injunction, which is disfavored and should issue only in the most compelling circumstances. *See TitleMax*, 142 F.4th at 328–29. Plaintiff cannot satisfy that heightened standard.

**A. <u>Plaintiff Has Not Made the Clear Showing of Likely Success Required for Mandatory Injunctive Relief</u>**

Plaintiff's likelihood-of-success showing fails for several independent reasons. In addition to the fact that the Delaware Court of Chancery has already rejected the central factual premise underlying the Motion, as discussed above, Louis Investments holds no cognizable § 541 estate interest in the Subject Properties, Kulick's prior sworn testimony contradicts the evidentiary foundation of the Motion, and Louis Investments has adduced no evidence relevant to the vast majority of the Subject Properties.

1. <u>Louis Investments Has No Cognizable § 541 Estate Interest in the Subject Properties</u>

The automatic stay protects cognizable legal or equitable interests held by the debtor in property—a lien, a mortgage, a title claim, a contract right with a definite counterparty, a statutory entitlement. 11 U.S.C. § 541(a)(1). The breadth of § 541 is real, but it does not transform every corporate affiliation or upstream governance relationship into a protected estate interest. Louis Investments premises its alleged right to relief on the vague allegation that it has "upstream management rights, governance rights, control rights, contract rights, claims, defenses, causes of action, and other property-related interests in or relating to the Subject Properties." Mot. ¶ 82. It holds no mortgage, lien, or recorded security interest in any Subject Property. It holds no deed,

title, or fee interest in any Subject Property. Its only claimed "estate interests" are derivative of the organizational arrangements through which Kulick structured his portfolio, not legally cognizable rights in the Subject Properties protected by §§ 541 and 362.

Plaintiff's own witness forecloses Louis Investments' argument to the contrary. Benjamin Didier, Vesta's Chief Operating Officer, declares: "Vesta Realty's operational authority at those properties is derived from these [Property Management] agreements. It does not arise merely from Marc Kulick's position or authority as a sponsor, or from Louis Investments, LLC." Didier Decl. ¶ 3 (Dkt. 16). That concession is dispositive on two levels. First, Louis Investments has no independent management interest of its own to protect: the entity seeking TRO relief is, by the account of the COO, a stranger to the agreements that confer operational authority. Second, Vesta's PMAs run to the Title Owner entities, which conveyed their properties to YSA by recorded deeds before the petition date. YSA as successor owner is not bound by management agreements it did not assume. Even Vesta's own authority has been extinguished by the prepetition conveyances; Louis Investments' far more attenuated claim fares no better.

Plaintiff relies on *In re Westec Corp.*, 460 F.2d 1139 (5th Cir. 1972), *In re Three Strokes Ltd. Partnership*, 397 B.R. 804 (Bankr. N.D. Tex. 2008), and *In re Chesnut*, 422 F.3d 298 (5th Cir. 2005), for the uncontested proposition that non-fee interests can be property of the estate protected by § 362(a)(3). But those cases do not carry Plaintiff's argument. *Westec* protected the debtor's recorded first and second mortgage interests in Florida real estate against a taxing authority that foreclosed postpetition without seeking leave of the reorganization court. *Three Strokes* protected the debtor's perfected second lien note—a $1,992,643 recorded security interest—against a first lienholder that sought to foreclose postpetition. And *Chesnut* extended stay protection to a debtor's arguable community-property interest in real estate titled to his wife,

when a creditor proceeded with a postpetition foreclosure sale with knowledge of the bankruptcy. The interests the debtors held in each of those cases—recorded mortgages, a perfected lien, a statutory community-property right—are categorically different from vague, undefined "upstream management rights" that derive from Louis Investments' governance relationship with the entities that previously held title to the Subject Properties. Louis Investments points to no lien, no mortgage, no recorded instrument, and no statutory property doctrine that would place its claimed interests in the same category.

2. Kulick's Prior Sworn Testimony Contradicts the Evidentiary Foundation of the Motion

A mandatory injunction requires a clear evidentiary showing. The Motion rests principally on the Kulick declaration, which asserts that Kulick lacked authority to bind Louis Investments and the Title Owner entities to YSA's collateral package. That declaration is directly and materially contradicted by Kulick's own prior sworn trial testimony. When YSA's counsel asked before the February 2025 loan whether the collateral package should cover the rest of his portfolio, Kulick responded: "The answer is yes and no. I suggest we keep that the same but maybe add a joinder to the portfolio as a whole." App'x Ex. 9 at APP 64. The next day, he confirmed by text that the documents should have "no change . . . except to add a joinder that joins any asset controlled by any affiliate of mine." *Id.* At trial, Kulick admitted he signed the Joinder as "manager, member or other authorized person" of the Guarantor Entities, acknowledged he was "desperate" for funding, and stated he was "not playing the victim on paying high interest rates." *Id.* at APP 45–46, 59. His deposition testimony went further: he testified that he had "full power and authority to bind the Affiliates" and described himself as the "sole decision-maker." App'x Ex. 14 (Kulick Feb. 5, 2026 Dep. Tr.) at 643:24–644:3 (APP 276–77); App'x Ex. 15 (Kulick Dec. 30, 2025 Dep. Tr.) at 19:10–14, 149:3–6 (APP 354, 484).

Kulick now declares the opposite. Both positions cannot be true. His trial testimony—given under oath, tested by cross-examination against 222 exhibits, and credited in a post-trial opinion—is far more reliable than a litigation declaration prepared days before an emergency hearing. *See Hunn v. Dan Wilson Homes, Inc.*, 2014 WL 12584308, at *5 (N.D. Tex. Jan. 29, 2014); *United States v. Lucas*, 338 F. Supp. 3d 139, 145 (W.D.N.Y. 2018). A mandatory injunction that rests substantially on a declaration materially at odds with the declarant's prior sworn testimony cannot supply the clarity the heightened standard demands. The four supplemental Vesta employee declarations do not cure this problem. Rohan Joseph, Benjamin Didier, Kelley Washington, and Kendra Butterfield each address operational disruption—who was present at which property, how many employees have returned, and what maintenance issues exist. Joseph Decl. ¶¶ 5–7, 9–10 (Dkt. 15); Didier Decl. ¶¶ 6–7, 11–13; Washington Decl. ¶¶ 4–6, 8–9 (Dkt. 17); Butterfield Decl. ¶¶ 8–11, 13–17 (Dkt. 18). Not one has personal knowledge of the loan documents, the Joinder, the Power of Attorney, or the contractual authority questions that determine whether Louis Investments has any legal right to the relief sought. Operational disruption is not a substitute for the legal showing the heightened standard requires.

3. <u>Louis Investments Fails to Support Its Overbroad Motion with Any Evidence Regarding the Vast Majority of the Subject Properties</u>

Even if Louis Investments could establish a clear right to relief with respect to one or two properties, its Motion sweeps across all thirty-plus Subject Properties—7,492 apartment units across multiple states. The evidentiary record it has assembled does not come close to supporting relief of that scope. The four supporting declarations address events at Riverpark, Village Creek, Lexington Commons, Barcelona, 727 Lofts, and Woodland Manor. *See* Joseph Decl. ¶¶ 5–7; Didier Decl. ¶¶ 6–7; Washington Decl. ¶¶ 4–6; Butterfield Decl. ¶¶ 2, 8–11. There is no property-specific evidence for the vast majority of the Subject Properties listed in Exhibit A to the

Complaint. A mandatory injunction is an extraordinary remedy that requires a property-specific showing, not a portfolio-wide allegation. Louis Investments has not clearly established its right to relief for any property, let alone for all of them. The Motion's ambition is inversely proportional to its evidentiary support, and that disproportion alone warrants denial.

### B. Plaintiff Has Not Demonstrated Irreparable Harm

Plaintiff fails to establish irreparable harm. To obtain the extraordinary relief it seeks, Plaintiff must show harm that is actual, imminent, and not compensable in money damages. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Speculative or self-inflicted harm does not suffice. *State v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021); *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 697 F. Supp. 3d 601, 626 (N.D. Tex. 2023).

Plaintiff's own Complaint defeats its irreparable harm showing. Count IV alleges that "Louis Investments has no adequate remedy at law," Compl. ¶ 115, yet Counts I and II seek "compensatory damages," "operational damages," "business-interruption damages," "attorneys' fees," and "costs" and "expenses" for the identical conduct. Compl. ¶¶ 93, 102. A plaintiff cannot plead a full suite of compensatory remedies and simultaneously maintain that no adequate remedy at law exists. Those claims—together with the statutory remedies available in this proceeding, *see* 11 U.S.C. § 362(k)(1) (mandating actual damages, costs, and fees for willful stay violations); 11 U.S.C. § 105(a) (authorizing compensatory civil contempt sanctions)—are the adequate remedy. *See Trifinity Sols., LLC v. Seay Money Prods.*, LLC, 2026 U.S. Dist. LEXIS 154941, at *4 (N.D. Tex. May 6, 2026) ("injury is irreparable only if it cannot be undone through monetary remedies") (quoting *Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 516 (N.D. Tex. 2024)); *Anyadike v. Vernon Coll.*, 2016 U.S. Dist. LEXIS 3161, at *28–29 (N.D. Tex. Jan. 11, 2016) (irreparable injury requires "no other adequate legal remedy").

The harms Plaintiff identifies are also economic in character and susceptible to calculation. Plaintiff describes disruption to management operations, rental income, software access, vendor and tenant relationships, and employee functions. Compl. ¶¶ 57, 114. Each of these is a business-interruption loss that can be valued in dollars. Courts consistently hold that loss of operational control over commercial real estate is not irreparable where the claimed losses are reducible to money. *See First Sec. Bank v. W&W Farms, Inc.*, 2020 U.S. Dist. LEXIS 18097, at *30 (N.D. Tex. Feb. 4, 2020) (what matters is "not so much the magnitude of the loss but rather the 'irreparability' of the loss"—whether losses "could not be undone through monetary remedies"). Recasting economic losses as "management rights" and "governance rights" does not convert them into equitable injuries for which no legal remedy exists.

No certain, great, and actual harm will follow from denial. As set forth *infra* § II.C–D, the greater danger to the Property—and to others holding valid interests in it—lies in Plaintiff and Kulick remaining in control. YSA intends to stabilize rents and address the operational and habitability failures that have accumulated under that control. Plaintiff has not carried its burden on this element, and the motion should be denied.

### C. <u>The Balance of Equities Strongly Favors Maintaining the Existing Legal Status Quo</u>

The balance of hardships favors YSA. YSA holds record title pursuant to instruments executed and recorded before the petition date, following litigation in which the Delaware Court of Chancery upheld the authority on which YSA acted. Granting an injunction would require the Court, on an abbreviated record, to displace that existing legal status quo, transfer operational control of a significant multifamily housing project, and effectively award Plaintiff much of the ultimate relief sought in this adversary proceeding. Denial of interim relief, by contrast, simply preserves the parties' legal positions while the merits are adjudicated. Should Plaintiff ultimately

prevail, the Bankruptcy Code provides mechanisms to unwind the challenged transactions; should YSA prevail, the extraordinary disruption of mandatory injunctive relief will have been avoided. The equities favor restraint.

### D. The Public Interest Favors Preserving the Existing Legal Status Quo Pending a Decision on the Merits

The public has a substantial interest in the stable operation of residential housing and the protection of tenants—interests the record shows Plaintiff has failed to serve. Local reporting documents a pattern of operational failures under Vesta's management—unpaid utility bills, neglected maintenance obligations, and tenants left to bear the consequences of Plaintiff's mismanagement. Hundreds of residents at Riverpark at Kensington faced an emergency water shut-off after the City of Tulsa posted termination notices citing more than $117,000 in unpaid utility bills at a complex that operates as an "all-bills-paid" community, meaning tenants pay utility costs through their monthly rent, yet management allowed the debt to accumulate while refusing to respond to city officials, leaving tenants to wonder where their rent money is going. *See* App'x Ex. 16 (*Tulsa Apartment Residents Face Water Shut-Off over $117,000 Unpaid Bill*, KRMG Mar. 23, 2026). Trash went uncollected for more than two weeks at multiple Vesta properties, including Riverpark, leaving overflowing garbage bins throughout the complex. *See* App'x Ex. 17 (*Progress on Apartment Trash Clean-Up, but Residents Still Frustrated*, KJRH, Jan. 9, 2026). The public interest is not served by restoring operational control to the very entity whose mismanagement produced these conditions. It demands orderly, stable management—not emergency judicial intervention transferring control before the parties' competing rights have been adjudicated.

Nor is this a case about preserving existing conditions. YSA's deed to the Riverpark Property was recorded on June 18, 2026—more than a month before Louis Investments filed its Chapter 11 petition. *See* App'x Ex. 18 (Special Warranty Deed for Riverpark). That recorded

instrument is the existing legal status quo. Plaintiff asks the Court to restore operational control to Vesta Realty and effectively grant substantial portions of the ultimate relief sought in the Complaint. Compl. ¶¶ 4, 25. Rule 65 should not be employed on an emergency record to accomplish what ordinarily requires full litigation on the merits. *See Savage Tavern, Inc. v. Signature Stag, LLC*, 589 F. Supp. 3d 624, 639 (N.D. Tex. 2022) (mandatory injunction that "seeks to alter the status quo prior to litigation rather than maintain it" requires that "the facts and law must *clearly* favor the moving party") (citing *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990)).

Finally, the public has a significant interest in the stability and predictability of recorded property transactions. Recorded mortgages, deeds, and other publicly recorded instruments exist so that parties may rely upon them in structuring commercial affairs. *See Amarex, Inc. v. El Paso Natural Gas Co*., 1987 OK 48, ¶ 14 (Okla. 1987). That interest is especially acute here, where the challenged transactions were followed by litigation culminating in a post-trial judgment upholding the authority on which those transactions were based. App'x Ex. 9 at APP 59–60, 66. Granting mandatory injunctive relief would undermine confidence in both recorded property interests and the finality of judicial proceedings. The public interest strongly favors preserving the parties' existing legal positions pending adjudication on the merits.

## III. <u>PLAINTIFF LACKS AUTHORITY TO COMMENCE THIS CASE OR SEEK EXTRAORDINARY EQUITABLE RELIEF</u>

Although the hearing for July 27 was principally scheduled to address Louis Investments' Motion for Temporary Restraining Order, there remains an overarching issue concerning Louis Investments' purported authority to even seek the relief it requests through this proceeding. It is, of course, basic that a bankruptcy petition filed on behalf of an entity is only valid if authorized by those with the legal power to act on the entity's behalf. *See In re WC 1st & Trinity GP, LLC*, 2021

U.S. Dist. LEXIS 252285, at *4 (W.D. Tex. Mar. 18, 2021) (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945)). Accordingly, even before the Court reaches Rule 65, the Court should assess whether the persons purporting to act on behalf of Louis Investments possessed authority to file bankruptcy, and by virtue of the bankruptcy petition, invoke this Court's jurisdiction. The threshold authority question arises from Louis Investments' own governing documents and the public record of its membership structure.

First, the Amended and Restated Operating Agreement of Louis Investments, LLC, executed on January 27, 2026—nearly six months before the July 20, 2026 petition date—designates YSA Investments 1, LLC as the Company's sole Member, owning 100% of the membership interests, and simultaneously designates YSA Investments 1, LLC as the Company's sole Manager. Ex. 20 (Operating Agreement) at APP 656. Section 6(a) of the Operating Agreement vests in the Manager "full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company" and expressly provides that "[n]o Member other than a Member who is the Manager has any authority to act for or on behalf of the Company." *Id.* at APP 657. Section 6(e) further provides that so long as YSA Investments 1, LLC or any affiliate is a Member, that entity must approve the appointment or removal of any Manager. *Id.* at APP 658. That ownership is confirmed by the executed Membership Certificate for Louis Investments, LLC, dated January 30, 2026, reflecting YSA Investments 1, LLC as the holder of 100% of the membership interests. Ex. 21 (APP 666). Marc Kulick's name appears nowhere in the Operating Agreement or the Membership Certificate. Yet Kulick's declaration filed in support of this Motion states under penalty of perjury that he is "the manager and 100% sole owner of Louis Investments, LLC." Kulick Decl. ¶ 1. Plaintiff has not demonstrated—because it cannot demonstrate—that YSA Investments 1, LLC, as the Company's sole Member and sole Manager, authorized or consented

to the filing of this Chapter 11 case or this adversary proceeding.

Second, the public record further corroborates YSA's ownership. A UCC-1 financing statement filed with the Kansas Secretary of State on January 26, 2026 (Filing No. 122068026) identifies the collateral as "100 out of 100 Membership Interests of Louis Investments, LLC, a Kansas Limited Liability Company." Ex. 22 (UCC-1 Filing) at APP 669. A UCC-3 Amendment filed three days later, on January 29, 2026 (Filing No. 122080526), substitutes YSA Investments 1, LLC as the secured party of record in place of YSA Holdings 1 LLC. Ex. 23 (UCC-3 Amendment) at APP 672. Those filings are stamped and acknowledged by the Kansas Secretary of State and were on file for nearly six months before the July 20, 2026 petition date. They are irreconcilable with Kulick's sworn statement that he is the Company's 100% sole owner. *See* Kulick Decl. ¶ 1. Conspicuously absent from Plaintiff's filing is any instrument showing that YSA Investments 1, LLC—the actual sole Member and sole Manager—authorized, approved, or even was consulted about the commencement of this bankruptcy case or the filing of this adversary proceeding. That omission matters because Plaintiff's present authority to prosecute this case depends on precisely that consent.

Where, as here, the authority of the persons purporting to act on behalf of the debtor is itself disputed—and where that dispute turns upon the same contractual provisions that form the basis of Plaintiff's merits claims—the Court should hesitate before issuing mandatory injunctive relief that would substantially alter the parties' legal and practical positions.

## IV. <u>ANY RELIEF SHOULD BE CONDITIONED ON SECURITY UNDER RULE 65(c)</u>

Rule 65(c) permits a temporary restraining order or preliminary injunction only if "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c), made applicable by Fed. R. Bankr. P. 7065. To the extent the Court grants any relief, YSA respectfully

requests that it be conditioned on the posting of a bond sufficient to compensate YSA for any costs and damages resulting from a wrongfully issued injunction.

## CONCLUSION

For the foregoing reasons, YSA respectfully requests that the Court deny the Motion; or, in the alternative, condition any relief on security under Rule 65(c) in an amount commensurate with YSA's exposure; and grant such other relief as is just.

Dated: July 27, 2026
Dallas, Texas

Respectfully submitted,

**DECHERT LLP**

*/s/ Debbie E. Green*

Marcus A. Helt (TX 24052187)
Debbie E. Green (TX 24059852)
Jack G. Haake (TX 24127704)
2651 N. Harwood Street, Suite 120
Dallas, Texas 75201-1574
Telephone: (214) 453-4900
marcus.helt@dechert.com
debbie.green@dechert.com
jack.haake@dechert.com

- and -

Jerry L. Hall (admitted *pro hac vice*)
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
jerry.hall@dechert.com

*Counsel for YSA Investments 1, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a true and correct copy of the foregoing Response was served by the Court's CM/ECF system on all parties receiving electronic notification in this proceeding.

Dated: July 27, 2026
Dallas, Texas

*/s/ Debbie E. Green*
Debbie E. Green